**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| BAYOU SHORES SNF, LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SYLVIA MATHEWS BURWELL, ) <br> Secretary of the United States Department ) <br> of Health and Human Services, ) <br> ) <br> and ) <br> ) <br> MARILYN TAVENNER, ) <br> Administrator of the Centers for ) <br> Medicare & Medicaid Services, ) <br> ) <br> and ) <br> ) <br> Elizabeth Dudek, ) <br> Secretary of the Florida Agency for ) <br> Healthcare Administration, ) <br> ) <br> Defendants. ) <br> ) | Case No. 8: 14-cv-01849 |

**UNITED STATES OF AMERICA'S MOTION TO DISMISS AND
OPPOSED MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER
<u>AND MEMORANDUM OF LAW</u>**

COMES NOW the United States of America on behalf of the Secretary of the United States Department of Health and Human Services and the Administrator of the Centers for Medicare & Medicaid Services, in their official capacity ("United States"), and hereby moves to

dismiss the complaint for lack of subject matter jurisdiction and to dissolve this Court's temporary restraining order (Doc. 9).[1]  In support thereof, the United States shows as follows:

## INTRODUCTION

The Plaintiff operates a skilled nursing facility (commonly referred to as a nursing home and referred to herein as "the nursing home").  The Defendant Centers for Medicare & Medicaid Services ("CMS") is the component of the United States Department of Health and Human Services that administers the Medicare program and oversees states' administration of the Medicaid program.  The federal and state defendants terminated Medicare and Medicaid payments, respectively, to the nursing home operator, after a series of inspections (known as "surveys") revealed that the nursing home operator was endangering residents, over and over again.

The Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction to compel continuation of Medicare and Medicaid payments.  At present, the TRO entered on August 1, 2014, restrains the defendants from terminating Medicare and Medicaid payments before August 15, 2014.  As explained herein, this Court does not have subject matter jurisdiction.  The Plaintiff is required by statute to exhaust its administrative appeal before seeking judicial review; only then will the federal court have jurisdiction.

The Plaintiff's administrative appeal is proceeding quickly. The Administrative Law Judge has ordered CMS to file evidence and briefing by August 22 and has given the nursing home operator until August 29 to do the same.  Once the administrative appeal has been

---

[1] Plaintiff has failed to properly serve process on the United States as required by Rule 4(i), Federal Rules of Civil Procedure. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir.2008) (citing *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir.1990).  The United States therefore specifically preserves its defenses pursuant to , the United States intends to file a motion to dismiss to include, but not limited to, defenses pursuant to Fed. R. Civ. P. 12(b) (2), (4) and (5).

resolved, if the Plaintiff is dissatisfied it may seek judicial review. Accordingly, the Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(1) and the temporary restraining order should be dissolved, pursuant to Fed. R. Civ. P. Rule 65(b)(4).

## MEMORANDUM OF LAW

In order to participate in the Medicare and Medicaid programs, and thus receive payments from those programs, a nursing home must comply with minimum health and safety standards. 42 U.S.C. § 1395i-3(a)-(d) (Medicare); 42 U.S.C. § 1396r(a)-(d) (Medicaid). These provisions were enacted as part of the Omnibus Budget Reconciliation Act ("OBRA") of 1987, after Congress became acutely aware of the poor treatment of nursing home residents. Congress was particularly concerned about nursing home operators, such as the Plaintiff in this case, who repeatedly abuse and neglect the sick and disabled citizens served by the Medicare and Medicaid programs, applying quick fixes to continue receiving taxpayer-funded payments. The legislative history refers to such behavior as "yo yo compliance" and concludes, "[If] there ever was a valid reason to allow nursing facilities to operate with numerous and repeated deficiencies, it no longer applies." H.R. Report 100-391(I), 100th Cong., 1st Sess. 1987, *reprinted in* 1987 U.S.C.A.A.N. 2313-I; 1987 WL 61524.

The statute provides: "It is the duty and responsibility of the Secretary to assure that requirements which govern the provision of care in skilled nursing facilities…and the enforcement of such requirements, are adequate to protect the health, safety, welfare, and rights of residents and to promote the effective and efficient use of public moneys." 42 U.S.C. § 1395i-3(f)(1). The statute further authorizes sanctions (known as "remedies") that include, *inter alia,* penalties, government-ordered corrective actions, and termination of Medicare and Medicaid payments. 42 U.S.C. § 1395i-3(h)(1) and (2). Nursing homes subject to remedies, including termination of Medicare and Medicaid payments, are entitled to administrative review pursuant

to 42 C.F.R. § 498.3(a) and (b)(8) and (13). The Plaintiff acknowledges that this administrative review affords a "full and fair" hearing. Plaintiff's Brief in Support of Motion for Emergency Ex Parte TRO ("P. Brief"), p. 7.

Termination of Medicare and Medicaid payments to a nursing home operator does not require discharge (what the Plaintiff calls "forced exile") of residents, during the administrative review. Rather, termination of government payments means simply that a nursing home operator does not receive continued payments unless and until the nursing home operator prevails in its administrative appeal. The decision to remain open during the pendency of an administrative appeal is one that has been made in multiple instances, at least in Florida. *See* D. Exh. D, ¶ 6. Regardless of a nursing home's financial condition, the immediate financial impact of termination is mitigated by 42 C.F.R. § 489.55, which provides that Medicare payments for care of residents in a facility at the time of termination continue for up to 30 days following termination. At the same time that payments continue, the applicable state health department, in this case the Florida Agency for Health Care Administration ("AHCA"), is legally charged, in the case of closure by the nursing home operator, with ensuring the "safe and orderly transfer" of residents to compliant nursing homes. 42 C.F.R. § 488.426(b). Finally, a nursing home operator whose Medicare and Medicaid participation is terminated may be reinstated, if the nursing home demonstrates that it has corrected health and safety violations and provides CMS with "reasonable assurance" of future compliance. 42 C.F.R. § 489.57.

## I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION

The Plaintiff challenges the Secretary's determination to terminate Medicare and Medicaid payments based on the Plaintiff's noncompliance with federal health and safety standards. Specifically, the Plaintiff contends that, subsequent to the Secretary's July 22, 2014, imposition

of termination, the nursing home corrected the deficient practices and conditions and eliminated the threat to residents. Verified Complaint, ¶¶ 6, 21 (Doc. 1). The Plaintiff also contends that the Secretary's decision to terminate Medicare and Medicaid payments was arbitrary, capricious, and an abuse of discretion. Id. at ¶ 21. The Plaintiff has requested an expedited hearing before an ALJ, to present its arguments and evidence concerning the alleged correction of the cited problems. Id. As previously noted, the ALJ has set an expedited schedule for submission of evidence and arguments.

Nonetheless, the plaintiff asks this Court to assume jurisdiction over the very issues set to be heard shortly by the ALJ, including, significantly, the issue of when or whether the nursing home operator effectively corrected the most recently cited health and safety violations. The plaintiff proposes several bases for subject matter jurisdiction, including: 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1361 (mandamus jurisdiction); 28 U.S.C. § 1651 (the All Writs Act); and, the plaintiff suggests, the Administrative Procedure Act ("APA"). Verified Complaint, ¶ 15. None of these statutes can supply subject matter jurisdiction because the plaintiff's claims arise under the Medicare Act, and the only source of jurisdiction over such claims is the statute set forth below.

> No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary] or any officer or employee thereof shall be brought under § 1331 [allowing judicial review of federal questions] or § 1356 of title 28 [allowing judicial review of actions based on the Constitution or federal statutes].

42 U.S.C. § 405(h). [2]

Federal court jurisdiction over any claim arising under the Medicare statute is limited to the instance in which the complainant has first presented his challenge to the Secretary, has exhausted his administrative remedies, and then seeks judicial review of the agency's final

---

[2] 42 U.S.C. § 405(h) applies to Medicare determinations by way of 42 U.S.C. § 1395cc(h)(1).

decision. If a complainant is dissatisfied with a termination from the Medicare program, he is entitled to "judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title. . ." 42 U.S.C. § 1395cc(h). The referenced section 405(g) is the fundamental judicial review provision of the Social Security Act.

It is well-established that claims arise under the Medicare Act, and thus are governed by §§ 405(g) & (h), if the standing and substantive basis of the claims derive from the Medicare Act. *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 750 (1975). The Supreme Court has emphasized that Section 405(h) is a "sweeping and direct" prohibition on federal court actions that have not first been channeled through the administration appeal process. *Salfi*, 422 U.S. at 757. It applies to "virtually all legal attacks" on Medicare determinations. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Thus, even constitutional challenges stemming from Medicare determinations must be channeled through the administrative review process before they can be presented to an Article III court. *Salfi*, 422 U.S. at 760-764; Ill. Council, 529 U.S. at 13–14. Similarly, exhaustion is not excused even if the Secretary has no authority to grant the requested relief. Ill. Council, 529 U.S. at 23–24.

The Court's Ringer holding is particularly instructive here, because, unlike the Plaintiff in this case, the Ringer plaintiffs were Medicare patients--the intended beneficiaries of the Medicare program. *See Northlake Comm. Hosp. v. US*, 645 F. 2d 1234, 1242 (7th Cir. 1981)(observing that disabled and elderly citizens, rather than health care providers, are the intended beneficiaries). Nonetheless, the Supreme Court rejected the Ringer plaintiffs' various theories of federal jurisdiction and required the plaintiffs to exhaust their administrative appeals before coming to federal court. *Ringer* was one of several Medicare beneficiaries seeking

Medicare coverage for a particular surgical procedure. 466 U.S. at 604-5.  When the Secretary determined not to pay for the procedure, *Ringer* and other Medicare beneficiaries tried to bypass the administrative appeal process, seeking declaratory and injunctive relief in federal district court, and alleging, inter alia, Constitutional and statutory violations on the part of the Secretary. Id. at 610.  The Court held that 42 U.S.C. §§ 405(g) and (h) were controlling, requiring that "all aspects" of the plaintiffs' claims be channeled through the administrative process before being presented to a federal court. Id. at 614-15.

The Court rejected the plaintiffs' invocation of the mandamus statute (28 U.S.C. § 1361) as a basis for pre-exhaustion jurisdiction. Id. at 616-17.  The Court explained that mandamus applies only to cases in which a plaintiff has exhausted all possible remedies and is owed a clear, nondiscretionary duty by a defendant.  Id.  The Court held that § 405(g) provided an adequate (if not instant) remedy. Id. The Court also rejected the plaintiffs' attempt to invoke the Administrative Procedure Act ("APA"), reiterating the principle established in the *Salfi* decision that claims seeking Medicare payments arise under the Medicare Act, and require exhaustion of administrative remedies—even if such claims are couched as arising under the APA or the Constitution. Id.

The Court of Appeals for the Eleventh Circuit has followed the Supreme Court's lead in no uncertain terms, observing: "In 42 U.S.C. § 405(g), Congress waived sovereign immunity by giving the federal courts jurisdiction to review and modify or reverse" decisions of the Secretary, and then in 42 U.S.C. § 405(h), Congress made clear that section 405(g) was "the *exclusive source of federal court jurisdiction* over cases involving [programs under the Social Security Act]." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) (emphasis added) (citations omitted).

Although the Eleventh Circuit has not yet addressed the precise question presented here – whether the exhaustion requirement applies to challenges to the termination of a Medicare provider agreement – the Court has strictly applied the jurisdictional bar of § 405 in related contexts. *Lifestar Ambulance Service, Inc. v. United States*, 365 F.3d 1293, 1296 (11th Cir. 2004) ("[T]he Medicare statute demands the channeling of virtually all legal attacks through the [agency] before a health care provider may seek judicial review of a claim arising under the Medicare statute.") (citation and internal quotation marks omitted); *Cochran v. Health Care Financing Administration*, 291 F.3d 775, 779 (11th Cir. 2002)("Until a claimant has exhausted her administrative remedies by going through the agency appeals process, a federal district court has no jurisdiction . . . . This is true even though her claim includes a challenge to the constitutionality of the statute or the regulations interpreting it."); *American Federation of Home Health Agencies, Inc. v. Heckler*, 754 F.2d 896, 898 (11th Cir. 1984)("[T]otal preclusion of review except after a [an administrative] decision is precisely what was intended.")(citation and internal quotation marks omitted, emphasis in original).

Several courts of appeals have specifically held that a healthcare provider's grievance over the termination of its Medicare provider agreement "arises under" the Medicare Act, depriving the courts of jurisdiction over the dispute until the provider has exhausted its administrative remedies. *See Livingston Care Ctr., Inc. v. U.S.*, 934 F.2d 719, 721 (6th Cir. 1991) (denying injunctive relief to nursing home); *Cathedral Rock of North Coll. Hill v. Shalala*, 223 F.3d 354 (6th Cir. 2000) (denying injunctive relief to nursing home being terminated from Medicare); *Affil. Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282 (5th Cir. 1999) (reversing district court's grant of injunctive relief to terminated home health agency and requiring exhaustion of administrative appeal); *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072

(7th Cir. 1982) (same); *Hopewell Nursing Home, Inc. v. Schweiker*, 66 F.2d 34, 39 (4th Cir. 1981) (holding that all complaints related to Medicare determinations, even those that may be "truly constitutional and statutory in character, and therefore incapable of resolution at the administrative level," must be channeled through the administrative appeal process before being presented to the federal courts).

In urging this Court to assume subject matter jurisdiction, the Plaintiff relies on a handful of older district court decisions (none within the 11th Circuit). P. Br., pp. 9-11, citing *Ridgeview Manor of the Midlands, L/P. v. Leavitt*, 2007 U.S. Dist. LEXIS 26249 (D.S.C. 2007); *Pathfinder Healthcare, Inc. v. Thompson*, 177 F. Supp. 2d 895 (E.D. Ark. 2001); *Frontier Health, Inc. v. Shalala*, 113 F. Supp. 2d 1192 (E.D. Tenn. 2000); and *International Long Term Care, Inc. v. Shalala*, 947 F. Supp. 15 (D.D.C. 1996). These decisions are not, of course, binding on this Court. Most significantly, however, they are inconsistent with Supreme Court and 11th Circuit precedent concerning jurisdiction and utterly at odds with multiple, recent decisions of district courts faced with the exact scenario here: the deficient nursing home operator seeking to delay an enforcement action through premature federal court intervention. These recent decisions include: *THI of Kansas at Highland Park, LLC v. Sebelius*, 2013 WL 4047570 (D. Kan. August 9, 2013)(dismissing for lack of subject matter jurisdiction nursing home operator's motion to enjoin Medicare termination pending administrative appeal); *Autumn Health Care of Zanesville, Inc. v. U.S. Dep't of Health and Human Serv.*, 2013 WL 4013969 (S.D. Ohio August 6, 2013)(denying nursing home operator's motion to restrain and enjoin Medicare termination and dismissing for lack of subject matter jurisdiction); *Athens Healthcare, Inc. v. Sebelius*, 2013 WL 2403578 (M.D. Pa. May 31, 2013)(dismissing for lack of jurisdiction a nursing home operator's demand for temporary restraining order to compel continued Medicare and Medicaid payments);

and *Bristol Health Care Investors, LLC v. Emkes*, 2013 WL 2403299 (E.D. Tenn. May 31, 2013)(vacating temporary restraining order, denying preliminary injunction, and dismissing for lack of subject matter jurisdiction). These recent decisions are consistent with numerous earlier district court decisions acknowledging the jurisdictional bar and denying equitable relief against the Medicare program. *See Forum Healthcare Group, Inc. v. CMS*, 495 F.Supp.2d 1321 (N.D. Ga. 2007) (nursing home); *Trade Around the World of PA v. Shalala*, 145 F.Supp.2d 653 (W.D. Penn. 2001) (same); *Northwest Healthcare, L.P. v. Sullivan*, 793 F.Supp. 724 (W.D. Tex. 1992) (same); *Dynamic Visions v. Dep't of Health and Human Servs.*, Civil Action 10-10864-JLT, 2011 WL 1527022 (D. Mass. Apr. 20, 2011) (home health provider).

Apparently aware of the vast body of case law discussed above, the Plaintiff argues that it should be excused from the exhaustion requirement, and CMS' enforcement action held in abeyance during the administrative appeal, because by the time the Plaintiff exhausts that appeal, it will have lost its lease and perhaps filed for bankruptcy. P. Brief, p. 8. Thus, the Plaintiff claims, the judicial review provided by 42 U.S.C. § 405(g) amounts to "no review at all." P. Brief, pp 7-8. In support of this legal theory, the Plaintiff cites *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19, 22 (2000). Plaintiff's reliance on *Illinois Council on Long Term Care, Inc.* is baffling. In that decision, the Supreme Court affirmed that § 405's bar on pre-exhaustion review by federal courts applies to "claims that contest a sanction or remedy [imposed against a deficient nursing home]…" Id. at 14. Further, the Court acknowledged that § 405(g)'s provision for post-exhaustion judicial review "adequately protects" the rights of nursing home operators. Id. at 24. The Plaintiff also argues that its complaints about the administrative appeal process (which the Plaintiff acknowledges is fair, if not speedy enough for Plaintiff's liking) amount to complaints that are "wholly collateral to the administrative process…" P.

Brief, p. 10. The Plaintiff cites *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Shalala v. Illinois Council on Long Term Care, Inc.*, the Court held that the same provisions for exhaustion and judicial review (§ 405(g) and (h)) at issue in Mathews adequately protect the interest of nursing home operators. 529 U.S. at 22-25. As a result, this Court lacks subject matter jurisdiction.

## II. THE TEMPORARY RESTRAINING ORDER SHOULD BE DISSOLVED

Having established that this Court is without subject matter jurisdiction, the temporary restraining order should be dissolved. *See McLaughlin v. Mississippi Power Co.*, 376 F.3d 344 (5th Cir. 2004) (affirming district court's decision to dissolve the injunction premised on its conclusion that it lacked subject-matter jurisdiction).

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that he conferred with counsel for the Plaintiff, regarding the request to dissolve the temporary restraining order, on August 7, 2014. Plaintiff's counsel stated she opposed the relief and, because of travel concerns, respectfully requested that any hearing on the motion occur on Wednesday August 13, 2014—the same day the parties have a hearing on Plaintiff's motion for a preliminary injunction. The United States respectfully suggests that a hearing on this motion is unnecessary, but does not otherwise oppose a hearing being set for August 13, 2014.

## CONCLUSION

For the reasons set forth herein, Plaintiff's complaint should be dismissed with prejudice, pursuant to Fed. R. Civ. P. Rule 12(b)(1), for the lack of subject matter jurisdiction. In addition, this Court should dissolve its temporary restraining order (Doc. 9).

- 12 -

This 11th day of August, 2014.

                                      Respectfully submitted,

                                      **A. LEE BENTLEY, III**
                                      United States Attorney

                        By:    s/ *Sean P. Flynn*
                                      **SEAN P. FLYNN**
                                      Deputy Chief, Civil Division
                                      Assistant United States Attorney
                                      USAO No. 111
                                      400 North Tampa Street, Suite 3200
                                      Tampa, Florida 33602
                                      Telephone: (813) 274-6000
                                      Facsimile: (813) 274-6200
                                      sean.flynn2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 11, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

      Alan C. Horowitz
      Alan.Horowitz@agg.com

      Christine A. Marlewski
      christine.marlewski@gray-robinson.com,linda.morrow@gray-robinson.com,

      Jerad Rissler
      jerad.rissler@agg.com

      Leslei G. Street
      Leslei.Street@ahca.myflorida.com

      Andrew T. Sheeran
      sheerana@ahca.myflorida.com

                                        By:    s/ *Sean P. Flynn*
                                                            SEAN P. FLYNN
                                                            Assistant United States Attorney