UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BAYOU SHORES SNF, LLC,

        Plaintiff,

v.                                    Case No. 8:14-cv-1849-T-33MAP

SYLVIA MATHEWS BURWELL,
Secretary of the United States
Department of Health and Human
Services, ET AL.,

        Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' the Secretary of the United States Department of Health and Human Services and the Administrator of the Centers for Medicare and Medicaid Services,[1] in their official capacities, Motion to Dismiss and Opposed Motion to Dissolve the Temporary Restraining Order (Doc. # 22), filed on August 11, 2014.

On August 11, 2014, this Court truncated the time in which Plaintiff Bayou Shores SNF, LLC, had to file a response

_____

[1] The Court notes that the United States of America brings the present Motion on behalf of the Secretary of the United States Department of Health and Human Services and the Administrator of the Centers for Medicare and Medicaid Services.

in opposition to the Motions, and as a result, Plaintiff had until August 14, 2014, to file a response. (Doc. # 26). Plaintiff filed a response in opposition to the Motions on August 14, 2014. (Doc. # 34). For the reasons stated below, this Court grants Defendants' Motions as this Court lacks subject matter jurisdiction.

## I.   **Background**

Plaintiff is the operator of a skilled nursing facility known as Rehabilitation Center of St. Pete (St. Pete Rehab). (Doc. # 1 at 1). St. Pete Rehab participates in the Medicare and Medicaid programs pursuant to a provider agreement with the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services (CMS) and applicable federal statutes and regulations. (Id. at ¶ 9).

On July 11, 2014, CMS' Florida survey agency – Agency for Healthcare Administration (AHCA) – concluded a Recertification and Complaint survey at St. Pete Rehab. (Id. at ¶ 50). Upon completion of the survey, the surveyors indicated that they intended to cite deficiencies related to findings of immediate jeopardy.[2] (Id.; Ex. E). The basis of

---

[2]   Immediate jeopardy is defined as, "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious

the immediate jeopardy concerned three residents in St. Pete Rehab's secured unit. (Id. at ¶ 51; Ex. E).

By letter dated July 14, 2014, AHCA notified St. Pete Rehab that "it was not in compliance with Federal participation requirements for nursing homes participating in the Medicare/Medicaid programs, and alleged that the conditions in the facility constituted immediate jeopardy to resident health and safety." (Id. at ¶ 52; Ex. F). AHCA further informed St. Pete Rehab that it was recommending to CMS that St. Pete Rehab's provider agreement be terminated effective August 3, 2014. (Id. at ¶ 53; Ex. F). The letter also instructed St. Pete Rehab that, in the event that the immediate jeopardy was removed, St. Pete Rehab was to inform AHCA as to the corrective measures taken. (Id.).

St. Pete Rehab submitted its Allegation of Compliance (AOC) on July 17, 2014, detailing the steps taken to remove the immediate jeopardy and alleging that it was in substantial compliance with the requirements of the Medicare and Medicaid programs as of July 18, 2014. (Id. at ¶ 54; Ex. G). On July 28, 2014, St. Pete Rehab submitted an amended AOC illustrating

---

injury, harm, impairment, or death to a resident." See 42 C.F.R. § 488.301

further corrective measures St. Pete Rehab had undergone in connection with the deficiencies identified in the survey. (Id. at ¶ 55; Ex. H). These additional measures were in place as of July 28, 2014. (Id.).

In addition to the "significant corrective measures implemented as described in [St. Pete Rehab's] AOCs," St. Pete Rehab retained an "independent third-party consulting organization to analyze and assess the sufficiency of the corrective measures taken in connection with the deficiencies identified in the [s]urvey." (Id. at ¶ 56; Ex. I). Beginning on July 28, 2014, consultants conducted an assessment of the corrective measures, suggested further improvements to St. Pete Rehab's practices and procedures, and performed audits and reviews involving "elopement; elopement training and risk assessment; [and] policy and procedure revisions and review." (Id. at ¶ 57).

At the conclusion of the assessment, the consultants determined that, based upon their review, including the interventions in place at St. Pete Rehab on July 29 and 30, 2014, St. Pete Rehab was in compliance with the deficiencies identified by the AHCA survey team during the June of 2014, inspection. (Id. at ¶ 60). Once the corrective measures were implemented, representatives of St. Pete Rehab made several

requests to AHCA and CMS to conduct a revisit and confirm that St. Pete Rehab was in substantial compliance with program requirements. (Id. at ¶ 59).

On July 22, 2014, CMS notified St. Pete Rehab that it was "not in substantial compliance with the participation requirements, and that conditions in [St. Pete Rehab] also constituted immediate jeopardy to residents' health and safety and substandard quality of care that was determined to exist on June 21, 2014, and is considered ongoing." (Id. at ¶ 60; Ex. K). Based on the findings of AHCA, CMS imposed the following sanctions upon St. Pete Rehab: (1) involuntary termination of St. Pete Rehab's provider agreement effective August 3, 2014; (2) discretionary denial of payment for new admissions effective July 24, 2014, and (3) a civil money penalty of $3,050 per day effective June 21, 2014. (Id.).

"St. Pete Rehab has appealed to CMS the determination that it was not in substantial compliance with the alleged deficiencies underlying the termination decision prior to the effective date of the termination." (Id. at ¶ 61, Ex. L). "As a part of this effort, St. Pete Rehab has requested an expedited hearing before an administrative law judge." (Id.; Ex. M).

Plaintiff initiated this action on August 1, 2014, seeking injunctive relief; specifically, a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent Defendants' threatened termination of St. Pete Rehab's Medicare and Medicaid provider agreement on August 3, 2014. (See Doc. # 1). According to Plaintiff, St. Pete Rehab is entitled to (1) a revisit survey and a determination of whether St. Pete Rehab is in substantial compliance with applicable Medicare regulations underlying the termination decision and (2) a final administrative hearing on the merits for such a determination prior to the drastic remedy of termination of its provider agreement. (Id. at 2).

Also on August 1, 2014, Plaintiff filed a Motion for Emergency Ex Parte Temporary Restraining Order and Preliminary Injunctive Relief. (Doc. # 2). Upon review of the Motion, this Court entered an Order issuing a temporary restraining order for 14 days – until August 15, 2014 - for the purpose of preserving the status quo. (Doc. # 9).

Thereafter, on August 11, 2014, Defendants filed the present Motions contending that dismissal of this action is warranted as this Court lacks subject matter jurisdiction. (Doc. # 22). Plaintiff filed a response in opposition on

August 14, 2014. (Doc. # 34). This Court has reviewed the Motions and the response thereto and is otherwise fully advised in the premises.

## II.  Legal Standard

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001). Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).

A facial attack on the complaint requires "the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). Factual attacks,

in comparison, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings. . . ." Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(quoting Lawrence, 919 F.2d at 1529). When the jurisdictional attack is factual, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. Scarfo, 175 F.3d at 960. Because the very power of the Court to hear the case is at issue, the Court is free to weigh evidence outside the four corners of the complaint. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982).

## III. **Analysis**

In its verified complaint, Plaintiff claims that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 1651, 42 U.S.C. § 405, 42 U.S.C. § 1395ii, the Court's general equitable powers, and under the Administrative Procedures Act, 5 U.S.C. § 705. (Doc. # 1 at ¶ 15). Defendants contend, however, that this Court has no statutory basis for jurisdiction as Plaintiff must first exhaust its available administrative remedies prior to seeking judicial review challenging Defendants' termination decision. (See Doc. # 22).

The Medicare and Medicaid Acts impose certification and quality of care requirements on nursing facilities. Cathedral

Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354, 366 (6th Cir. 2000); see 42 U.S.C. § 1395(i)-3(a)(3),(b)-(d); 42 U.S.C. § 1396r (a)(3), (b)-(d). Where the Secretary finds that a nursing facility is not in compliance with these requirements, it has authority to impose remedies on the facility, which includes termination of provider agreements. Id.

According to the regulations, when a facility challenges a determination that it is not in substantial compliance with regulations or a termination of its participation in both programs, the facility must seek review of this determination through the Medicare administrative appeals process. Id. "Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim." Heckler v. Ringer, 466 U.S. 602, 605 (1984). The Secretary has rendered a "final decision" on a Medicare claim only after the individual claimant has "pressed his claim through all designated levels of administrative review." Id. at 606.

Therefore, claims "arising under" the Medicare statute are subject to clear limitations as to jurisdiction established by Congress. See Cathedral Rock of N. Coll. Hill, Inc., 223 F.3d at 366; Heckler, 466 U.S. at 605. Those claims

may be brought only through established federal administrative procedures, which require presentation to the appropriate federal agency, exhaustion of administrative remedies and the issuance of a final decision before a plaintiff may seek judicial review by a federal court.

42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act. Heckler, 466 U.S. at 615. "Thus, to be true to the language of the statute, the [initial] inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act, not whether it lends itself to a 'substantive' rather than a 'procedural' label." Id.

In its verified complaint, Plaintiff alleges that this action arises under the Social Security Act, 42 U.S.C. §§ 301, *et seq.*, implicating both the Medicare Act, 42 U.S.C. §§ 1395, *et seq.*, and the Medicaid Act, 42 U.S.C. §§ 1396, *et seq.* (Doc. # 1 at ¶ 14). Therefore, the Court is satisfied that the claims in this action arise under the Medicare and Medicaid Act. See Heckler, 466 U.S. at 615 (finding that all aspects of respondents' claim arose under the Medicare Act;

it was of no importance that respondents' sought declaratory and injunctive relief and not an actual award of benefits).

The Medicare Act incorporates two significant provisions of the Social Security Act that deal with judicial review of agency actions. 42 U.S.C. § 1395cc(b)(2) provides that, after the Secretary has determined that a Medicare provider fails to comply substantially with provisions of its provider agreement, or with certain provisions of the Medicare Act or its regulations, the Secretary may terminate the provider agreement:

> The Secretary may refuse to enter into an agreement under this section or, upon such reasonable notice to the provider and the public as may be specified in regulations, may refuse to renew or may terminate such an agreement after the Secretary —
>
> (A) has determined that the provider fails to comply substantially with the provisions of the agreement, with the provisions of this subchapter and regulations thereunder, or with a corrective action required under section 1395ww(f)(2)(B) of this title. . . .

42 U.S.C. § 1395cc(b)(2).

In turn, 42 U.S.C. § 1395cc(h)(1)(A), provides that an institution dissatisfied with a determination made by the Secretary under 42 U.S.C. § 1395cc(b)(2) is entitled to a hearing to the same extent as provided in 42 U.S.C. § 405(b),

"and to judicial review of the Secretary's final decision after such hearing as provided in § 405(g). . . ." <u>See</u> 42 U.S.C. § 1395cc(h)(1)(A).

42 U.S.C. § 405(g) provides for an administrative exhaustion requirement as a prerequisite to judicial review:

> Any individual, after any final decision of [the Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . . . The findings of [the Secretary] as to any fact, if supported by substantial evidence, shall be conclusive. . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

42 U.S.C. § 405(g).

The second judicial review provision of the Social Security Act incorporated into the Medicare Act is 42 U.S.C. § 405(h). As correctly articulated by Defendants, "the Supreme Court has emphasized that Section 405(h) is a 'sweeping and direct' prohibition on federal court actions that have not first been channeled through the administration appeal process." (Doc. # 22 at 6)(citing <u>Weinberger v. Salfi</u>, 422 U.S. 749, 757 (1975)).

The language of 42 U.S.C. § 405(h) states:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, [the Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

42 U.S.C. § 405(h) (emphasis added). The plain language of 42 U.S.C. § 405(h) precludes judicial review of the Secretary's determinations pursuant to 42 U.S.C. § 405(g) unless its exhaustion requirements are met and further forecloses alternative routes of review under federal question jurisdiction or jurisdiction based on the United States' status as a defendant. See Livingston Care Ctr., Inc. v. United States, 934 F.2d 719, 721 (6th Cir. 1991); Thi of Kan. at Highland Park, LLC v. Sebelius, No. 13-2360-JAR-JPO, 2013 WL 4047570, at *5 (D. Kan. Aug. 9, 2013).

Therefore, as detailed above, federal jurisdiction over any claim "arising under" the Medicare statute is limited to the instance in which the complainant has first presented its challenge to the Secretary, has exhausted its administrative remedies, and then seeks judicial review of the agency's final decision. See Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 10, 13 (2000)(holding that a nursing home

provider's challenge to Medicare regulations could not be brought under 28 U.S.C. § 1331, as such a challenge must be "channeled through" the review provisions of the Medicare Act); see also Heckler, 466 U.S. at 605 (observing that "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g)"). At the time the verified complaint was filed, Plaintiff had failed to satisfy the exhaustion requirement. However, before this Court can dismiss this action on jurisdictional grounds, the Court must address Plaintiff's contention that it falls under several exceptions to the exhaustion requirement, and therefore, Plaintiff is not required to exhaust all administrative remedies prior to seeking judicial review. (See Doc. # 34).

### A. 28 U.S.C. § 1331

Pursuant to 28 U.S.C. § 1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

According to Plaintiff, the exhaustion requirement under the Medicare and Medicaid Acts does not apply when exhaustion would constitute "no review at all" or "the practical equivalent of a total denial of judicial review" for a

14

plaintiff. (Doc. # 34 at 9)(citing Shalala, 529 U.S. at 19, 22). "The Supreme Court has noted that a statutory exhaustion requirement does not apply under circumstances that would result in the 'complete preclusion of judicial review' for a particular plaintiff even though such a channeling requirement may apply generally to most actions." (Doc. # 2 at 8) (citing Shalala, 529 U.S. at 22-23).

Here, Plaintiff argues that should this Court require Plaintiff to exhaust all administrative remedies prior to seeking judicial review, St. Pete Rehab and its residents will have no review at all before the irreparable harm takes place, after which time any potentially available administrative remedies will have no value. (Doc. # 2 at 8). Furthermore, Plaintiff submits that an administrative finding that St. Pete Rehab reached substantial compliance before August 3, 2014, which comes after the provider agreement has been terminated and residents have been removed from St. Pete Rehab, "will provide little comfort to the families of residents traumatized by an unnecessary and premature transfer to another facility." (Id.). Likewise, Plaintiff asserts that an administrative finding in its favor, only after the termination of the provider agreement, cannot undo the financial that harm St. Pete Rehab will suffer as a result

of the termination and the likely loss of its goodwill in the community. (Id.).

Under these circumstances, therefore, Plaintiff contends that "If the resolution of these claims is postponed until after Plaintiff has exhausted its administrative appeals, or if the termination is not enjoined pending completion of the administrative and judicial review, Plaintiff can have no meaningful review at all because it will not survive the review process." (Doc. # 34 at 10). Thus, the exhaustion requirement would effectively and completely preclude administrative and judicial review of a decision, which it contends is arbitrary and capricious and an abuse of discretion. (Doc. # 2 at 8). Accordingly, as suggested by Plaintiff, the present circumstances fall within the exception to the exhaustion requirements of 42 U.S.C. § 405.

Throughout its numerous arguments, Plaintiff does not dispute that it will receive administrative review of the Secretary's determination that affords a full and fair hearing. Instead, as indicated above, Plaintiff's argument turns on the timing of such a hearing. Specifically, if an administrative hearing is conducted after the termination of the provider agreement, the damage – financial and otherwise – will have already occurred.  Therefore, Plaintiff posits

that if this Court declines to intervene and maintain the "status quo," and as a result, force Plaintiff to exhaust all administrate remedies, the judicial review provided by 42 U.S.C. § 405(g) amounts to "no review at all." This Court disagrees.

42 U.S.C. § 405(g) provides Plaintiff with an administrative review procedure. Although the Court acknowledges Plaintiff's concerns with the timing in which the Administrative Law Judge will reach the merits of the case, the Court finds it far from "no review at all." To the extent Plaintiff suggests that the review provided by 42 U.S.C. § 405(g) amounts to no review at all as there is potential for St. Pete Rehab to endure a negative financial impact, the Court notes that this argument is mitigated by 42 C.F.R. § 489.55, which provides that Medicare payments for care of residents in a facility at the time of termination continue for up to 30 days following termination. (See Doc. # 22 at 4); 42 C.F.R. § 489.55.

Plaintiff further argues that as set forth in Matthews v. Eldridge, 424 U.S. 319 (1976), "federal courts should consider the exhaustion requirement waived in cases where (1) the constitutional claim is wholly collateral to the merits

17

of the claim and (2) the 'interest in having a particular issue resolved promptly is so great.'" (Doc. # 2 at 9-10).

Here, Plaintiff argues that its constitutional due process claims are wholly collateral to the issues raised in the administrative process, as it is not asking the Court to rule on the merits, but rather to issue injunctive relief to maintain the status quo "pending the administrative and judicial review contemplated by statue." (Doc. # 34 at 11).

To bolster its position, Plaintiff cites Ridgeview Manor of Midlands, L.P., v. Leavitt, No. CA 307-cv-861-JFA, 2007 WL 1110915 (D.S.C. Apr. 9, 2007). (See Doc. # 28 at 4; Doc. # 24 at 12-13). In Ridgeview, the court found the claim before it to be entirely collateral to the merits of the decision to terminate plaintiff's provider agreements. 2007 WL 1110915, at *5. Specifically, the court found that the plaintiff's causes of action concerned the question of administrative remedies; not a substantive decision to terminate plaintiff's provider agreement. Id. at *4. However, this Court notes that in Ridgeview, the court stated "If plaintiff were requesting this court to set aside the *substantive decision to terminate plaintiff's provider agreement*, then the exhaustion of administrative remedies would indeed be a prerequisite to this court assuming jurisdiction." Id. (emphasis added).

18

In this action, Plaintiff challenges the Secretary's determination to terminate its provider agreement based on Plaintiff's noncompliance with federal standards. Specifically, Plaintiff contends that, subsequent to the Secretary's July 22, 2014, imposition of termination, St. Pete Rehab corrected the deficiencies cited in the June of 2014, survey; thus, according to the independent consultants, it brought itself into substantial compliance. Plaintiff further argues that the Secretary's decision to terminate its provider agreement was arbitrary, capricious, and an abuse of discretion.

Plaintiff has requested an expedited hearing before the Administrative Law Judge to present its position concerning its correction of the cited deficiencies. Nonetheless, according to Defendant, "Plaintiff asks the Court to assume jurisdiction over the very issues set to be heard by the ALJ, including, the issue of when or whether the nursing home operator effectively corrected the most recently cited health and safety violations." (Doc. # 22 at 5). The Court agrees.

Plaintiff's claims presently before this Court are inextricably intertwined with the issues raised in the administrative review process. The relief requested stems from Plaintiff's objections to the Secretary's handling of

the survey process; specifically its failure to provide a revisit survey to St. Pete Rehab to determine whether Plaintiff was in substantial compliance with the federal regulations. If this Court was to grant further injunctive relief, it would be required to delve into the merits of this action and consider substantive issues surrounding this case. Namely, whether Defendants provided Plaintiff with the appropriate process prior to termination of its provider agreement. The Court declines to engage in such a determination.

As the Court finds that Plaintiff's claims are inextricably intertwined with the claims before the Administrative Law Judge, the Court declines to determine the second element under <u>Matthews</u> - whether the "interest in having a particular issue resolved promptly is so great."

### B. 28 U.S.C. § 1361

Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In its verified complaint, Plaintiff submits that "[t]his action has been filed to compel the Secretary, an officer of the United States, to perform duties owed to St.

Pete Rehab, and thus provides a basis for jurisdiction." (Doc. # 2 at 12). Therefore, according to Plaintiff, 42 U.S.C. § 405(h) "does not, on its face, preclude the Court from exercising jurisdiction under 28 U.S.C. § 1361." (Id.).

The standard for mandamus jurisdiction in the Eleventh Circuit generally requires that "(1) the defendant owes a clear nondiscretionary duty to the plaintiff and (2) the plaintiff has exhausted all other avenues of relief." Lifestar Ambulance Serv. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004). However, "[t]he Supreme Court has made clear that '[o]rdinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed.'" Id. (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 27–28 (1943)).

Plaintiff argues that without injunctive relief, exhaustion would be futile. (Doc. # 2 at 12). Namely, Plaintiff suggests that even if it is ultimately successful in the administrative process there would be no relief that could remedy the harm that will be caused by the termination. (Id. at 9, 12)(citing Pathfinder Healthcare, Inc. v. Thompson, 177 F. Supp. 2d 895 (E.D. Ark. 2001)). In Pathfinder, the Court found that denying plaintiff the limited relief – preliminary injunction – would amount to the

equivalent of a total denial of judicial review. Id. at 898. The Pathfinder court found particularly compelling the irreparable harm to plaintiff's residents if they were forced to move unnecessarily; specifically as a significant portion of the residents were developmentally disabled or mentally challenged, and some had been institutionalized their entire lives. Id. at 897.

However, the Court finds notable that in Pathfinder, none of the violations cited by the defendant involved immediate jeopardy to the plaintiff's residents, which is distinguishable from the facts in the instant action. Plaintiff admits that the relevant survey determined that immediate jeopardy existed at St. Pete Rehab. (Doc. # 1 at ¶¶ 50-52). Therefore, and Plaintiff does not dispute, the Secretary had every right, within its discretion, to enforce the remedies that it did, which includes termination of the provider agreement. Accordingly, this Court finds that Plaintiff is bound by the administrative review process that derives from such a determination.

To that end, Plaintiffs cannot invoke the extraordinary remedy of mandamus because they have an alternative avenue of relief. "The Medicare Act establishes a comprehensive remedial scheme, providing both administrative hearing rights

for aggrieved providers, such as [Plaintiff], and judicial review of the Secretary's final decisions." Lifestar Ambulance Serv., Inc., 365 F.3d at 1295 (citing Ringer, 466 U.S. at 616 (rejecting the plaintiff's invocation of the mandamus statute as a basis for pre-exhaustion jurisdiction as mandamus applies only to cases in which a plaintiff has exhausted all possible remedies and is owed a clear nondiscretionary duty by a defendant)). 42 U.S.C. § 405(g) provides Plaintiff with an adequate remedy for challenging all aspects of the Secretary's termination determination, and thus 42 U.S.C. § 405(g) is the only avenue for judicial review of its claims.

### C. 5 U.S.C. § 705

According to 5 U.S.C. § 705:

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705. Plaintiff submits that 5 U.S.C. § 705 authorizes a reviewing court to issue injunctive relief to preserve the status quo pending administrative review and, ultimately, to preserve its own judicial review following the administrative process. Here, according to Plaintiff, St. Pete Rehab is seeking to preserve its existence by enjoining the termination and preserving its right to judicial review *following* an administrative hearing; and therefore, waiver of the exhaustion requirement is appropriate. (See Doc. # 34).

To combat Plaintiff's position, Defendants cite Ringer, 466 U.S. at 605, for the proposition that claims seeking Medicare payments arise under the Medicare Act, and require exhaustion of administrative remedies – even if such claims are couched as arising under the Administrative Procedures Act or the Constitution. (Doc. # 22 at 7). The Court agrees. While the Court acknowledges Plaintiff's position, the Court declines to allow Plaintiff to couch its claims as falling under the Administrative Procedures Act, in order to obtain an advantageous ruling, when Plaintiff admits in its verified complaint that its claims arise under the Medicare and Medicaid Act. See Shalala, 529 U.S. at 12-13 ("[T]he bar of § 405(h) reaches beyond ordinary administrative law

24

principles of 'ripeness' and 'exhaustion of administrative remedies. . . .'").

For the reasons set forth above, the Court concludes that 42 U.S.C. 405(g), with its administrative exhaustion requirement, provides the sole avenue for judicial review of the Secretary's termination determination. Plaintiff has not provided this Court with sufficient support – factual or otherwise – to demonstrate its entitlement to a waiver of the exhaustion requirement. As Plaintiff admittedly has not exhausted all of the available administrative remedies, this Court finds that it lacks subject matter jurisdiction over this action. Thus, Defendants' Motion to Dismiss is granted.

As this Court lacks subject matter jurisdiction over this action, the Court dissolves the temporary restraining order issued on August 1, 2014 (Doc. # 9), and as a consequence, denies Plaintiff's request to extend the temporary restraining order (Doc. # 32).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Dismiss and Opposed Motion to Dissolve the Temporary Restraining Order (Doc. # 22) are **GRANTED** for lack of subject matter jurisdiction.

(2)  The temporary restraining order entered on August 1, 2014 (Doc. # 9), is hereby **DISSOLVED**.

(3)  Plaintiff's Motion to Extend the Temporary Restraining Order (Doc. # 32) is **DENIED**.

(4)  The Clerk is directed to terminate any previously scheduled deadlines and pending motions and thereafter **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of August, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record