UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BAYOU SHORES SNF, LLC,

       Plaintiff,

v.                        Case No. 8:14-cv-1849-T-33MAP

SYLVIA MATHEWS BURWELL,
Secretary of the United States
Department of Health and Human
Services, ET AL.,

       Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff Bayou Shores SNF, LLC's Emergency Motion for an Injunction Pending Appeal (Doc. # 38), filed on August 15, 2014. On August 18, 2014, this Court truncated the time in which Defendants Sylvia Mathews Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services; Marilyn Tavenner, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; and Elizabeth Dudek, in her official capacity as Secretary of the Florida Agency for Healthcare Administration had to file a response in opposition to the Motion. (Doc. # 39). As a result, Defendants had until August 20, 2014, to file a response. (Id.).

Defendants filed responses in opposition to the Motion on August 19, 2014 (Doc. # 42), and August 20, 2014 (Doc. # 43). For the reasons stated below, this Court denies Plaintiff's Motion.

## I.   **Background**

Plaintiff is the operator of a skilled nursing facility known as Rehabilitation Center of St. Pete (St. Pete Rehab). (Doc. # 1 at 1). St. Pete Rehab participates in the Medicare and Medicaid programs pursuant to a provider agreement with the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services (CMS) and applicable federal statutes and regulations. (Id. at ¶ 9).

On July 11, 2014, CMS' Florida survey agency – Agency for Healthcare Administration (AHCA) - concluded a Recertification and Complaint survey at St. Pete Rehab. (Id. at ¶ 50). Upon completion of the survey, the surveyors indicated that they intended to cite deficiencies related to findings of immediate jeopardy.[1] (Id.; Ex. E). The basis of

---

[1]   Immediate jeopardy is defined as, "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident." See 42 C.F.R. § 488.301.

the immediate jeopardy concerned three residents in St. Pete Rehab's secured unit. (Id. at ¶ 51; Ex. E).

By letter dated July 14, 2014, AHCA notified St. Pete Rehab that "it was not in compliance with Federal participation requirements for nursing homes participating in the Medicare/Medicaid programs, and alleged that the conditions in the facility constituted immediate jeopardy to resident health and safety." (Id. at ¶ 52; Ex. F). AHCA further informed St. Pete Rehab that it was recommending to CMS that St. Pete Rehab's provider agreement be terminated effective August 3, 2014. (Id. at ¶ 53; Ex. F). The letter also instructed St. Pete Rehab that, in the event that the immediate jeopardy was removed, St. Pete Rehab was to inform AHCA as to the corrective measures taken. (Id.).

St. Pete Rehab submitted its Allegation of Compliance (AOC) on July 17, 2014, detailing the steps taken to remove the immediate jeopardy and alleging that it was in substantial compliance with the requirements of the Medicare and Medicaid programs as of July 18, 2014. (Id. at ¶ 54; Ex. G). On July 28, 2014, St. Pete Rehab submitted an amended AOC illustrating further corrective measures St. Pete Rehab had undergone in connection with the deficiencies identified in the survey.

(Id. at ¶ 55; Ex. H). These additional measures were in place as of July 28, 2014. (Id.).

In addition to the "significant corrective measures implemented as described in [St. Pete Rehab's] AOCs," St. Pete Rehab retained an "independent third-party consulting organization to analyze and assess the sufficiency of the corrective measures taken in connection with the deficiencies identified in the [s]urvey." (Id. at ¶ 56; Ex. I). Beginning on July 28, 2014, consultants conducted an assessment of the corrective measures, suggested further improvements to St. Pete Rehab's practices and procedures, and performed audits and reviews involving "elopement; elopement training and risk assessment; [and] policy and procedure revisions and review." (Id. at ¶ 57).

At the conclusion of the assessment, the consultants determined that, based upon their review, including the interventions in place at St. Pete Rehab on July 29 and 30, 2014, St. Pete Rehab was in compliance with the deficiencies identified by the AHCA survey team during the June of 2014, inspection. (Id. at ¶ 60). Once the corrective measures were implemented, representatives of St. Pete Rehab made several requests to AHCA and CMS to conduct a revisit and confirm

that St. Pete Rehab was in substantial compliance with program requirements. (Id. at ¶ 59).

On July 22, 2014, CMS notified St. Pete Rehab that it was "not in substantial compliance with the participation requirements, and that conditions in [St. Pete Rehab] also constituted immediate jeopardy to residents' health and safety and substandard quality of care that was determined to exist on June 21, 2014, and is considered ongoing." (Id. at ¶ 60; Ex. K). Based on the findings of AHCA, CMS imposed the following sanctions upon St. Pete Rehab: (1) involuntary termination of St. Pete Rehab's provider agreement effective August 3, 2014; (2) discretionary denial of payment for new admissions effective July 24, 2014; and (3) a civil money penalty of $3,050 per day effective June 21, 2014. (Id.).

"St. Pete Rehab has appealed to CMS the determination that it was not in substantial compliance with the alleged deficiencies underlying the termination decision prior to the effective date of the termination." (Id. at ¶ 61, Ex. L). "As a part of this effort, St. Pete Rehab has requested an expedited hearing before an administrative law judge." (Id.; Ex. M).

Plaintiff initiated this action on August 1, 2014, seeking injunctive relief; specifically, a temporary

restraining order, a preliminary injunction, and a permanent injunction to prevent Defendants' threatened termination of St. Pete Rehab's Medicare and Medicaid provider agreement on August 3, 2014. (See Doc. # 1). According to Plaintiff, St. Pete Rehab is entitled to (1) a revisit survey and a determination of whether St. Pete Rehab is in substantial compliance with applicable Medicare regulations underlying the termination decision and (2) a final administrative hearing on the merits for such a determination prior to the drastic remedy of termination of its provider agreement. (Id. at 2).

Also on August 1, 2014, Plaintiff filed a Motion for Emergency Ex Parte Temporary Restraining Order and Preliminary Injunctive Relief. (Doc. # 2). Upon review of the Motion, this Court entered an Order issuing a temporary restraining order for 14 days – until August 15, 2014 – for the purpose of preserving the status quo. (Doc. # 9). Thereafter, on August 11, 2014, Defendants filed a Motion to Dismiss and Opposed Motion to Dissolve the Temporary Restraining Order contending that dismissal of this action is warranted as this Court lacks subject matter jurisdiction. (Doc. # 22). Upon review of the Motions and the response thereto, the Court granted Defendants' Motions, dissolved the

temporary restraining order, denied Plaintiff's Motion to Extend the Temporary Restraining Order (Doc. # 32), and dismissed this case for lack of subject matter jurisdiction. (See Doc. # 35).

Plaintiff filed the present Motion on August 15, 2014, requesting that this Court enter an injunction precluding Defendants from (1) withholding Medicare and Medicaid payments from St. Pete Rehab for care provided to Medicare and Medicaid residents during the pendency of St. Pete Rehab's appeal to the Eleventh Circuit and (2) involuntarily relocating the Medicare and Medicaid residents of St. Pete Rehab during the pendency of that appeal. (See Doc. # 38). Defendants filed responses in opposition to the Motion on August 19, 2014 (Doc. # 42), and August 20, 2014 (Doc. # 43). This Court has reviewed the Motion and the responses and is otherwise fully advised in the premises.

## II. Discussion

"As a general rule, '[t]he filing of a notice of appeal . . . divests the district court of control over those aspects of the case involved in the appeal.'" Pacific Ins. Co. v. Gen. Dev. Corp., 28 F.3d 1093, 1097 n. 7 (11th Cir. 1994) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)). However, a trial court has the power to enter

orders necessary to preserve the status quo while a case is pending on appeal. <u>Lawson v. Life of S. Ins. Co.</u>, 738 F. Supp. 2d 1376, 1379 (M.D. Ga. 2010); <u>Peak Med. Okla. No. 5, Inc. v. Sebelius</u>, No. 10-CV-597-TCK-PJC, 2010 WL 4809319, at *2 (N.D. Okla. Nov. 18, 2010)("A trial court has a long-established right to make orders appropriate to preserve the status quo while a case is pending on appeal); <u>Newton v. Consol. Gas Co. of N.Y.</u>, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of [j]ustice require, preserve the status quo until decision by the appellate court.").

This Court notes that granting a motion for injunctive relief pending appeal is an "extraordinary remedy." <u>Touchston v. McDermott</u>, 234 F.3d 1130, 1132 (11th Cir. 2000). "When considering such a motion, the court is guided by . . . jurisprudence under Fed. R. App. P. 8(a) and assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public." <u>Alaska Cent. Express, Inc. v. United States</u>, 51 Fed. Cl. 227, 229 (Fed. Cl. 2001)(quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987)).

Fed. R. Civ. P. 62(c) "permit[s] a district court, *in its discretion*, to suspend, modify, restore or grant an

injunction during the pendency of the appeal." <u>Wyatt By & Through Rawlins v. Poundstone</u>, 941 F. Supp. 1100, 1107 (M.D. Ala. 1996)(emphasis added). Pursuant to Fed. R. Civ. P. 62(c), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court *may* suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c)(emphasis added).

In determining whether to issue an injunction pending appeal pursuant to Fed. R. Civ. P. 62(c), a court should consider the following factors: (1) whether the movant is likely to succeed on the merits of its appeal; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. <u>Wyatt By & Through Rawlins</u>, 941 F. Supp. at 1108 (citing <u>Hilton</u>, 481 U.S. at 776).

Plaintiff contends that its appeal of this Court's Order granting Defendants' Motion to Dismiss and dissolving the temporary restraining order (Doc. # 35) "presents several important legal questions of first impression, some of which

have never been addressed by any court prior to this Court's decision and some of which have resulted in conflicting rulings." (Doc. # 37 at 2; Doc. # 38 at 1-2). "At the moment, the answers to those legal questions affect the lives of over 120 Medicare and Medicaid residents of St. Pete Rehab, most of whom are physically and/or psychologically fragile; 175 employees and their families, who depend on St. Pete Rehab for their livelihoods; and one local community that can ill afford the loss of additional jobs." (Id.).

Therefore, Plaintiff requests that this Court enter an injunction precluding Defendants from (1) withholding Medicare and Medicaid payments from St. Pete Rehab for care provided to Medicare and Medicaid residents during the pendency of St. Pete Rehab's appeal to the Eleventh Circuit and (2) involuntarily relocating the Medicare and Medicaid residents of St. Pete Rehab during the pendency of that appeal. (See Doc. ## 37, 38)(citing Peak Med. Okla. No. 5, Inc., 2010 WL 4809319, at *2 (granting injunctive relief pending appeal of court's order that dismissed action for lack of subject matter jurisdiction)).

It is well settled that a district court may issue injunctive relief while an appeal is pending regarding the determination of its jurisdiction over the underlying

dispute. Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs., No. CIV.A.3:05CV1098-G, 2005 WL 1923566, at *2 (N.D. Tex. Aug. 11, 2005) aff'd, 455 F.3d 500 (5th Cir. 2006); Stewart v. Dunn, 363 F.2d 591, 598 (5th Cir. 1966)("The law is clear that pending a decision on the question of jurisdiction, a [d]istrict [c]ourt has the power to issue a temporary restraining order in order to preserve existing conditions."). However, "a court lacks the authority to provide injunctive relief once it has determined that it lacks jurisdiction over the underlying case." Nat'l Athletic Trainers' Ass'n, Inc., 2005 WL 1923566, at *2 (finding that the court "lack[ed] the authority to provide injunctive relief once it [had] determined that it lack[ed] jurisdiction over the underlying case."); McCammon v. United States, 584 F. Supp. 2d 193, 196 (D.D.C. 2008) (questioning whether court had jurisdiction to provide injunctive relief to movant after previously determining it lacked subject matter jurisdiction); Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

In its previous Order, this Court determined that it lacked subject matter jurisdiction over this case as

Plaintiff admittedly failed to exhaust all of the available
administrative remedies:

> [T]he Court concludes that 42 U.S.C. 405(g), with
> its administrative exhaustion requirement,
> provides the sole avenue for judicial review of the
> Secretary's termination determination. Plaintiff
> has not provided this Court with sufficient support
> – factual or otherwise – to demonstrate its
> entitlement to a waiver of the exhaustion
> requirement. As Plaintiff admittedly has not
> exhausted all of the available administrative
> remedies, this Court finds that it lacks subject
> matter jurisdiction over this action.

(See Doc. # 35). Therefore, the Court dissolved the temporary
restraining order in place at the time and declined to engage
in an analysis as to whether additional injunctive relief was
appropriate under the present circumstances.

As articulated by Defendants, "Plaintiff now moves this
Court to do the very act the Court just found it lacked
jurisdiction to do: enjoin the United States from terminating
Plaintiff's provider agreement." (Doc. # 42 at 4). This Court
declines to do so. As this Court previously found that it
lacks subject matter jurisdiction over this action, the Court
finds that it lacks the authority to issue the requested
injunctive relief during the pendency of Plaintiff's appeal.

In making its determination, the Court notes that
Plaintiff's ability to seek the requested relief is not
foreclosed by this Court's decision. Pursuant to Fed. R. App.

P. 8(a), Plaintiff may seek the requested relief from the Eleventh Circuit pending its appeal:

    (a) Motion for Stay.

        (1) Initial Motion in the District Court. A party must ordinarily move first in the district court for the following relief:

            * * *

        (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

        (2) Motion in the Court of Appeals; Conditions on Relief. A motion for the relief mentioned in Rule 8(a)(1) *may be made to the court of appeals or to one of its judges.*

<u>See</u> Fed. R. App. P. 8 (emphasis added).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Bayou Shores SNF, LLC's Emergency Motion for an Injunction Pending Appeal (Doc. # 38) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>20th</u> day of August, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

13